UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAMONTE D., | ) | |
| Plaintiff, | ) ) ) | No. 24-cv-8762 |
| v. | ) ) | Magistrate Judge Keri L. Holleb Hotaling |
| FRANK BISIGNANO[1], Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lamonte D.[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying him disability benefits. The parties have filed cross motions for summary judgment.[3] As detailed below, Plaintiff's motion for summary judgment [Dkt. 11] is DENIED and Defendant's motion for summary judgment [Dkt. 15] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

1. **Procedural History**

On May 17, 2021, Plaintiff protectively filed a Title II application for disability insurance benefits, alleging disability beginning May 29, 2020. [Administrative Record ("R.") 15.] The claim was denied initially and on reconsideration. *Id*. On March 21, 2024, after an Administrative Hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision. [R. 15-24.] The Appeals Council denied review on September 26, 2023 [R. 16], rendering the ALJ's March 21,

---

[1] On May 7, 2025, Frank Bisignano, was sworn in as the Commissioner of Social Security and in accordance with Fed. R. Civ. Pro. Rule 25(d), Frank J Bisignano, Commissioner of Social Security, has been substituted as the defendant. [Dkt. 18.]
[2] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).
[3] Plaintiff has filed a Motion to Remand [Dkt. 11] and a corresponding Brief in Support of Motion to Remand [Dkt. 12], which the Court construes as a motion for summary judgment.

1

2024 decision the final decision of the Commissioner. 20 C.F.R. §404.981. On September 23, 2024, Plaintiff filed the instant action seeking review of the Commissioner's decision. [Dkt. 1.]

2. **The ALJ's Decision**

In the March 21, 2024 decision, the ALJ analyzed Plaintiff's claim following the SSA's usual five-step evaluation process to determine whether Plaintiff was disabled. [R. 15-24.] At Step One, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2022, and that Plaintiff had not engaged in substantial gainful activity since May 29, 2020, through his date last insured. [R. 17.] At Step Two, the ALJ found that Plaintiff suffered from severe impairments of diabetes mellitus, atrial fibrillation, left leg chronic venous thrombosis/edema, major depressive disorder, and anxiety disorder.[4] *Id*. At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 18.] In determining Plaintiff's severe impairments, the ALJ also analyzed the so-called Paragraph B and Paragraph C criteria for assessing mental impairments. The ALJ found Plaintiff had (i) no limitation in understanding, remembering or applying information, (ii) a moderate limitation in interacting with others, (iii) no limitation in concentrating, persisting or maintaining pace, and (iv) no limitation in adapting or managing oneself. [R. 18-19.] The ALJ further found that Plaintiff had the ability to function independently, engage in activities of daily living, and handle changes and demands in his environment without difficulty. [R. 19 (citing R. 933).]

Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: "no climbing of ladders, ropes or scaffolds;

---

[4] While Plaintiff has also been diagnosed with dyslipidemia, gout, hypertension, and obstructive sleep apnea, the ALJ did not find these were "severe" impairments. [R. 17-18.]

occasional climbing of ramps or stairs; occasionally stooping, kneeling, crouching, or crawling; avoid concentrated exposure to pulmonary irritants and hazards including dangerous, moving machinery and unprotected heights; and avoid concentrated exposure to working with the public or in crowds." [R. 19.] At Steps Four, the ALJ concluded that Plaintiff's physical impairments are not disabling and that Plaintiff "was capable of performing past relevant work as a home attendant" as the "work did not require the performance of work-related activities precluded" by Plaintiff's RFC. [R. 22-23.] The ALJ therefore found that Plaintiff was not disabled from the alleged onset date through his date last insured. [R. 23.]

    3.    **Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court

reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion." *Hess*, 92 F.4th at 676. Finally, while reviewing a commissioner's decision, the court does not second-guess the ALJ's judgment – the Court may not "substitute [its] own judgment for that of the Commissioner [,] reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023).

**4. Discussion**

Plaintiff argues (1) the RFC limitation to "avoid concentrated exposure to working with the public or in crowds" is vague and ambiguous and thus, cannot be supported by substantial evidence and (2) substantial evidence does not support the ALJ's Step Four findings because the ALJ did not comply with Social Security Ruling ("SSR") 00-4p. As detailed below, the Court disagrees.

**A. The RFC Limitation to "Avoid Concentrated Exposure to Working with the Public or in Crowds" is Neither Vague nor Ambiguous and is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's use of the terms "avoid" and "concentrated" in the RFC are vague, the term "public" is ill-defined, and the ALJ erred in compiling an RFC with terms "that were not vocationally relevant, nor well-defined, to the expert during the hearing." [Dkt. 12, at 3-5.] While the Court agrees it has typically seen this RFC formulation to "avoid concentrated exposure" in the context of sensory irritants (*i.e.*, noise, smell, etc.), that does not mean the RFC is vague and ambiguous.

Where terms are not defined by agency policies or regulations, the Courts look at the ordinary, common meaning of the terms. *United States v. Melvin*, 948 F. 3d 848, 852 (7th Cir. 2020). While the term "avoid" is "not addressed in any agency policy, the [Dictionary of

4

Occupational Titles ("DOT")], or its companion publications[,]" [Dkt. 12, at 3], the Seventh Circuit has adopted the plain meaning of the term as "to keep away from, to prevent the occurrence or effectiveness of, and to refrain from." *Tate v. Dart*, 51 F.4th 789, 801 (7th Cir. 2022) (internal citations omitted). The dictionary definition of "concentrated", as Plaintiff has defined it, is "rich in respect to a particular or essential element; contained or existing or happening together in a small or narrow space, not spread out; and intense[.]" [Dkt 12, at 4 (internal citations omitted).] Lastly, the dictionary definition of public is generally "the people as a whole." *Public*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/public (last visited Nov. 25, 2025). Consistent with this definition of public, when asked if a patient is a member of the public, the Vocational Expert ("VE") at the Administrative Hearing testified that a "[p]atient is not a public, it's an individual." [R. 71.]

Plaintiff argues that the use of the word 'avoid' in the RFC implies a "stringent requirement to keep away from the specified exposure **entirely**" and ultimately "equates to a limitation of 'never' in Agency Standards." [Dkt. 12, at 3-4.] While the Court agrees that "avoid" is more prohibitive than terms like "occasionally" or "limit", the Court disagrees with Plaintiff's interpretation when considering the phrase "avoid concentrated exposure" holistically. As judges of the Northern District of Illinois and from other district courts have explained, there is a difference between "avoiding concentrated exposure" versus "avoiding *any* exposure". *McCristal v. Astrue*, No. 09-cv-7044, 2011 WL 2648591, at *11 (N.D. Ill. July 5, 2011); *see also Sayles v. Barhart*, No. 00-cv-7200, 2001 WL 1568850, at *9 (N.D. Ill. Dec. 7, 2001) ("An absolute bar on such activities is obviously a more extreme limitation than a bar which would prevent 'concentrated'—but not occasional or periodic—exposure."); *Helm v. Comm'r of Soc. Sec.*, No. 1:16-CV-1280 (DJS), 2018 WL 1621521, at *8 (N.D.N.Y. Mar. 30, 2018) ("[T]he ALJ's RFC

limitation indicates an avoidance of concentrated exposure to excessive noise, not avoidance of all exposure to excessive noise[.]"). Here, the RFC does not require the Plaintiff to avoid *all* exposure to the public or crowds. Instead, the RFC limitation is to avoid concentrated exposure. Adopting Plaintiff's proposed dictionary definition for the term concentrated, this would require Plaintiff's position to only avoid *intense* or *consistent* (*i.e.*, not spread out) exposure to the public or crowds.

Plaintiff further contends the ALJ erred by presenting the VE with an RFC that included terms that were ill-defined and not vocationally relevant, that the VE "was forced to insert their own definition in place of the ALJ", and that consequently, "the ultimate determination cannot be supported by substantial evidence." [Dkt. 12, at 4-5.] Plaintiff bases this argument on the premise that the VE could not render an informed decision because the "ALJ did not properly define what they consider the public to mean[.]" [Dkt. 12, at 5.] However, nothing in the record suggests to the Court that the VE and the ALJ had differing definitions of what constitutes the "public." Neither the ALJ nor the VE asked any clarifying questions nor requested any additional responses.[5] It seems to follow that both sides interpreted the term in line with the term's ordinary meaning. As noted above, both the ordinary dictionary definition and the VE's explanation consistently describe the public to be comprised of people as a whole, not an individual. [*Public*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/public (last visited Nov. 25, 2025); R. 71.] If the ALJ disagreed with the VE's definition of whether an individual can be considered to be the "public", the ALJ had the opportunity to press the VE or address it in the ALJ's opinion. The ALJ did neither. The only disagreement here seems to be that Plaintiff considers an individual, on its own, to fit the definition of "public" and this definition is

---

[5] In contrast, when the ALJ or the VE needed further clarification on other issues, they asked follow-up questions. For example, the ALJ requested further clarification from the VE on which of the Plaintiff's past positions were medium level skilled positions versus light level skilled positions. [R. 66-68.]

6

inconsistent with the ordinary dictionary definition of the term.

In arguing that the term "public" was ill-defined, Plaintiff cites several cases suggesting that an RFC needs to use terms that are quantifiably and vocationally relevant. [Dkt. 12, at 5-6.] However, the Court does not find Plaintiff's arguments persuasive. Plaintiff cites case law where an ALJ used the term "occasional" in an RFC instead of the term "brief" which is the term the consultants in that matter used in their medical opinions. The Court remanded that matter given that the terms "brief" and "occasional" have different meanings and "[t]he mere fact that the ALJ seemed to use these terms interchangeably is not sufficient to support the Commissioner's argument" that the ALJ was translating the term into the agency defined "quantifiable vocationally relevant term[.]" *Hulett v. Acting Comm'r of Soc. Sec.*, No. 3:21-cv-971 JD, 2022 WL 18399609, at *3 (N.D. Ind. Dec. 19, 2022). Here, the ALJ did not use different terms with different meanings interchangeably. The record indicates that both the ALJ and the VE were considering the same definition of the term public. Plaintiff also cites case law where ALJs were found to have acted appropriately when changing an RFC limitation to "more quantifiably relevant terms" and when rejecting an RFC that did not specify what level of noise may be permitted. *Henri A. Kijakazi*, No. 22-cv-461-TWP-TAB, 2023 WL 386334, at *4 (S.D. Ind. Jan 25, 2023) (finding that the phrase "low social context" is vague and the ALJ's translation to "occasional interaction with the public, coworkers, and supervisors" appeared to be reasonable); *Coles v. Kijakazi*, No. 20-cv-1431, 2021 WL 6126937, at *8 (C.D. Ill. Nov. 12, 2021) (citing the ALJ's rationale that the "[t]he limitation of no concentrated exposure to noise, without any specification as to the specific noise level, would imply that the individual could not tolerate even concentrated exposure to the 'very quiet' noise of level 1"). Here, the term public is clear and does not require any additional quantifiable description – the definition of public does not have different levels and inherently does not equate to a single

individual (as opposed to an irritant like noise that may exist at different volumes).

Consistent with the above ordinary definitions of the terms, the VE concluded that a person who must avoid concentrated exposure to working with the public or in crowds would be able to perform Plaintiff's past work, as performed by Plaintiff, at at least two of Plaintiff's past three job sites (Gentle Home and Cook County Public Guardian). [R. 69-71.] Plaintiff testified that his past work at Gentle Home involved one-on-one work with a client who he helped get up and out of bed in the mornings and with whom he took walks. [R. 43.] Similarly, Plaintiff testified he was an independent contractor with Cook County Public Guardian and worked as a one-on-one attendant helping with activities of daily living (ADL) which involved encouraging his client for ADL at a nursing home. He further explained that while he typically had only one client, he would sometimes have an additional assignment to escort another client to a hospital or clinic approximately once per month (*e.g.* escorting a client to a dialysis appointment). [R. 44-47.] Other than the instances of escorting a client to a hospital or clinic, Plaintiff did not testify to additional examples of how his position as a home attendant required more than limited exposure to the public. The VE considered their own training, knowledge, education, and experience when concluding that a person with the hypothetical RFC (and the one the ALJ ultimately ascribed to Plaintiff) would be able to perform Plaintiff's past work *as Plaintiff performed it*. [R. 71.]

The Court disagrees with Defendant's claim that Plaintiff failed to timely raise these concerns at the Administrative Hearing or that Plaintiff's counsel did not challenge the VE's testimony. [Dkt. 16, at 5-6.] While very brief and limited to only a few questions, Plaintiff's counsel did ask questions to clarify whether the VE considered a patient to be a member of the public (after which the VE explained that a patient is an individual on its own, not the public). [R. 71.] Plaintiff's counsel also presented the VE with a hypothetical questioning the VE on the

difference between "avoid" versus "occasional" and "public" versus "individual". Specifically, Plaintiff's counsel questioned whether someone who "could only have *occasional* contact with other *individuals*" would be capable of performing Plaintiff's past work. [R. 71-72 (emphasis added).] The VE responded no. [R. 72.] The VE's conclusion to this hypothetical highlights that the VE views this hypothetical as different from the hypothetical the ALJ presented, further indicating the VE understood the ALJ's RFC and the ordinary meaning of the terms used therein. In the Social Security benefits context, occasional implies a frequency up to one-third of the time. SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996) ("'Occasionally' means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday."); SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) ("'Occasionally' means occurring from very little up to one-third of the time."). As explained by the VE, an individual is a single person rather than multiple people together forming the public. [R. 71.] It follows from this distinction that the VE concluded that Plaintiff's past work would be precluded by an RFC limitation imposing *occasional* contact with other *individuals* but is not precluded by an RFC limitation that merely *avoids concentrated exposure* to working with the *public or in crowds*.

Thus, as explained above, the Court has seen no evidence indicating the VE did not understand the ALJ's wording in the formulation of the hypotheticals. Neither the ALJ's hypothetical to the VE, nor the ALJ's ultimate RFC determination were vague, ambiguous, or ill-defined. Consequently, the Court holds that the ALJ properly relied on the entire record, including the VE's testimony, in determining Plaintiff's RFC, and the Court further finds there is substantial evidence to support such RFC.

### B. The ALJ Did Not Err by Not Investigating the Vocational Expert's Testimony Under SSR 00-4p

Plaintiff next argues the VE presented conflicting testimony and that the ALJ failed to

9

investigate and correct such conflict as required by SSR 00-4p. [Dkt. 12, at 7-8.] However, SSR 00-4p is not applicable to this case because the VE concluded (and the ALJ subsequently adopted) that Plaintiff would be able to continue his past work as he performed it rather than as it is generally performed in the national economy (analogously, this is like comparing apples to oranges; inherently, there can be no conflict between this testimony and the DOT description of this position). Additionally, as Defendant notes in its motion for summary judgement [Dkt. 16, at 10-11], SSR 00-4p was rescinded and replaced effective January 6, 2025, by SSR 24-3p. SSR 24-3p, available at https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html. SSR 24-3p requires the Federal courts to review "final decisions using the rules that were in effect at the time [they] issued the decisions." As such, the Court does discuss Plaintiff's arguments and the ALJ's decision not to investigate what Plaintiff considers a conflict below.

SSR 00-4p placed an affirmative responsibility on an ALJ "to ask about any possible conflict between [a] VE or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). However, such responsibility only existed when the VE based their conclusion on how the job is generally performed in the national economy. In contrast, when the VE's conclusion is limited to Plaintiff's past work *as it was actually performed*, the DOT and SSR 00-4p become irrelevant. *See Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (holding that "the ALJ's reliance on the VE's testimony was proper" as it "reflected the nature of [Plaintiff's] work as it was actually performed by him" and that the "ALJ was permitted to rely on the VE's opinion, even if the VE contradicted the DOT"); *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008) (holding the Commissioner's understanding that "the DOT and SSR 00-4p never came into play here because the VE found that [Plaintiff] could still perform her work…*as she had actually performed the job in the past*, not as it is generally performed" to be correct).

Here, the Vocational Expert explicitly testified that an individual with the RFC ultimately adopted by the ALJ would not be able to perform Plaintiff's past work as generally performed in the national economy, but such an individual would be able to perform Plaintiff's past work as it was performed by the Plaintiff. [R. 69-71.] As such, the ALJ had no obligation to investigate any potential conflict with the DOT under SSR 00-4p.

### 5. Conclusion

For the reasons detailed above, the Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment [Dkt. 11] is DENIED and Defendant's motion for summary judgment [Dkt. 15] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: December 3, 2025**

                                                     Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge